[No. H008809. Sixth Dist. Feb. 17, 1994.]

MACLYN MORRIS, JR., Plaintiff, Cross-defendant and Respondent, v.
JACK B. HORTON et al., Defendants, Cross-complainants and
Appellants;
WALLACE & HINZ, Cross-defendant and Respondent.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication
with the exception of parts A., B., C. and D.2.

**COUNSEL**

Berliner Cohen, Russell J. Hanlon and Jeffrey S. Stone for Defendants, Cross-complainants and Appellants.

Pettit & Martin, Edward B. Lozowicki and Suchitra V. Narayen for Plaintiff, Cross-defendant and Respondent.

Rohlff, Howie & Frischholz and Barbara J. Frischholz for Cross-defendant and Respondent.

## OPINION

**MIHARA, J.**—Defendants Jack and Nancy Horton purchased unimproved real property in Los Altos Hills in the mid-1970's. Jack B. Horton is a general contractor who owns a drywall business. The Hortons decided to build an estate on this property for themselves and, with Jack Horton acting as the general contractor, they contracted with plaintiff Maclyn Morris, Jr., to provide the "millwork" or woodwork for the various buildings the Hortons were erecting on the property. Morris subcontracted to cross-defendant Wallace & Hinz the construction of an ornate winding staircase for the main residence of the Horton estate. Morris and his crew encountered substantial difficulties during installation of the millwork because of framing deficiencies which were not revealed by the plans upon which the parties' contract was based. When Morris brought these deficiencies to the attention of the Hortons, they told him to do whatever was necessary to properly install the millwork, and they agreed to pay for the extra costs incurred by Morris to do so. When work on the millwork contract was approximately 98 percent complete, the Hortons told Morris to leave the property and refused to allow him to complete the remaining work. The Hortons subsequently refused to pay for the additional costs Morris had incurred as a result of the framing deficiencies and also refused to pay for other work which had been undertaken by Morris on a time and materials basis.

Morris filed suit against the Hortons to recover these costs. The Hortons responded by filing a cross-complaint in which they sought to recover from Morris for costs they had incurred to repair, replace, complete or change work which Morris had agreed to perform. The Hortons also claimed that Morris and Wallace & Hinz were liable to them for the cost of repairing and replacing work which was negligently performed by Wallace & Hinz on the winding staircase pursuant to their subcontract with Morris. The complaint and the cross-complaint were jointly tried to a jury, and the jury awarded Morris $72,406 and awarded the Hortons $8,100. The jury specially found that the Hortons were not entitled to recover any sum as a result of any inadequacies in the work done by Wallace & Hinz on the winding staircase. Morris was awarded his costs and attorney fees pursuant to a contractual provision in the agreement between himself and the Hortons. Motions by the Hortons for judgment notwithstanding the verdict, for a new trial and to vacate the judgment were denied.

The Hortons appeal and contest all of the jury's findings. With respect to the verdict in Morris's favor on the complaint, the Hortons claim that the evidence does not support the jury's finding that the Hortons were obligated to pay for any extra work on the millwork contract. They also claim that

there was insufficient evidence of the amount of work for which Morris was not paid, that Morris was not entitled to recover damages for his borrowing costs or lost profits and that Morris was not entitled to recover more damages than he sought in his complaint. With respect to their cross-complaint, the Hortons claim that (1) the evidence was insufficient to support the jury's special finding that the Hortons had not incurred any reasonable costs of repair as a result of Wallace & Hinz's negligence in the construction of the stairway and (2) the amount of damages awarded to the Hortons on their cross-complaint was insufficient as a matter of law. For the reasons expressed below, we modify and affirm the judgment.

DISCUSSION

A.-C.*

. . . . . . . . . . . . . . . . . . . . . . . . . .

D. CHALLENGE TO CROSS-COMPLAINT VERDICT

The Hortons challenge the jury's verdict on their cross-complaint. The jury awarded the Hortons $8,100, but specially found that the Hortons had incurred no "reasonable cost[s] of repair . . . as a legal result of the conduct of [Morris and Wallace & Hinz]" in the construction of the staircase. The Hortons challenge both the special finding regarding the staircase and the adequacy of the damages awarded.

1. *Finding Regarding the Staircase*

The jury rejected the Hortons' claim that Morris and Wallace & Hinz were liable for the cost of repairing or replacing the winding staircase. The Hortons now claim that the jury could not possibly have rejected their negligence per se theory of liability. The Hortons' negligence per se theory was based on alleged building code violations. The Hortons first notified Morris and Wallace & Hinz of perceived inadequacies in the staircase in May 1986, nearly a year and a half after the staircase was installed. Two months later, the Hortons contracted with a third party for the replacement of the staircase with a new staircase of a different design. Only then did the Hortons have the staircase inspected and cited for building code violations.

---

*See footnote, *ante*, page 968.

The Hortons failed to establish their entitlement to judgment on a negligence per se theory under Evidence Code section 669.[16] The Hortons presented evidence that the staircase, as constructed by Wallace & Hinz, violated the Los Altos Hills building code. The Hortons, as owners and occupants of the building in which the staircase was installed, are within the class of persons for whose protection the Los Altos Hills building code was adopted. Nevertheless, negligence will not be presumed from violation of the building code unless the "injury" suffered "resulted from an occurrence of the nature which the [building code] was designed to prevent." (Evid. Code, § 669, subd. (a)(3); *Stafford* v. *United Farm Workers* (1983) 33 Cal.3d 319, 324 [188 Cal.Rptr.600, 656 P.2d 564]; *Mark* v. *Pacific Gas & Electric Co.* (1972) 7 Cal.3d 170, 183 [101 Cal.Rptr.908, 496 P.2d 1276]; *Nunneley* v. *Edgar Hotel* (1950) 36 Cal.2d 493, 497 [225 P.2d 497].) It is a question of law whether the injury suffered by the Hortons was one which the building code was designed to prevent. (*Fredette* v. *City of Long Beach* (1986) 187 Cal.App.3d 122, 135-136 [231 Cal.Rptr. 598].)

The Los Altos Hills building code provisions which prescribe the height and width of stairs and the height of the handrail on a staircase were designed to *ensure the safety of persons using a staircase*. These regulations were not designed to prevent owners from incurring costs associated with the remediation of building code violations. The Hortons rely on a single sentence in the First District Court of Appeal's decision in *Huang* v. *Garner* (1984) 157 Cal.App.3d 404 [203 Cal.Rptr. 800] which they believe leads to a contrary conclusion. In that case, the plaintiffs were subsequent purchasers of an apartment building who brought a negligence action against the original designers of the apartment building after the plaintiffs discovered that the building had suffered extensive structural damage due to design and structural defects. The First District reversed the trial court's grant of nonsuit and held that the plaintiffs were entitled to go to the jury on a negligence per se theory. Along the way to this holding, the First District stated, without citation to any authority, that "[w]e think it reasonable to conclude that the Uniform Building Code was designed to prevent the types of defects and damages to construction which occurred in this case." (*Id.* at p. 414.) The

---

[16]The doctrine of negligence per se is codified in Evidence Code section 669. "The failure of a person to exercise due care is presumed if: [¶] (1) He violated a statute, ordinance, or regulation of a public entity; [¶] (2) The violation proximately caused death or injury to person or property; [¶] (3) The death or injury resulted from an occurrence of the nature which the statute, ordinance, or regulation was designed to prevent; and [¶] (4) The person suffering the death or injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted." (Evid. Code, § 669, subd. (a).) "This presumption may be rebutted by proof that: [¶] (1) [t]he person violating the statute, ordinance, or regulation did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law . . . ." (Evid. Code, § 669, subd. (b).)

Hortons claim that *Huang* supports their contention that the Los Altos Hills building code provisions at issue herein were designed to prevent the injury they suffered. The Hortons' reliance on *Huang* is misplaced. The "injury" in *Huang* was of an entirely different order than the injury suffered by the Hortons. The evidence in *Huang* indicated that the designers' violations of the Uniform Building Code had resulted in severe structural damage which was likely to lead to the building's collapse. (*Id.* at pp. 411, 420, fn. 11, 424, fn. 13.) We do not disagree with the First District's conclusion that structural provisions of the Uniform Building Code were designed to prevent the structural deterioration and collapse or near-collapse of buildings. This conclusion does not, however, support the Hortons' claim that provisions of the Los Altos Hills building code regarding the height and width of stairs were designed to prevent building owners from incurring costs to remediate violations of those provisions. To the extent that the quoted sentence from *Huang* indicates otherwise, we disagree with it.

As the costs incurred by the Hortons for the repair or replacement of the staircase were not the type of "injury" the relevant provisions of the Los Altos Hills building code were designed to prevent, the Hortons were not entitled to prevail on a negligence per se theory.[17]

### 2. *Inadequacy of Damages Award**

. . . . . . . . . . . . . . . . . . . . . . . . . . .

### CONCLUSION

The judgment on Morris's complaint is hereby modified to reflect an award of $70,366.10 rather than $72,406 due to the insufficiency of the evidence to support the higher figure. In all other respects, the judgment is affirmed. Morris shall recover his appellate costs and appellate attorney fees.

Cottle, P. J., and Bamattre-Manoukian, J., concurred.

---

[17]It follows that the trial court erred in instructing the jury on negligence per se.
*See footnote, *ante*, page 968.